UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AARTI HOSPITALITY, LLC,
d/b/a HILTON GARDEN INN,
et al.

      **Plaintiffs,**                **Case No. 2:06-cv-886**
                                        **JUDGE GREGORY L. FROST**
      **v.**                        **Magistrate Judge Mark R. Abel**

CITY OF GROVE CITY, OHIO,
et al.

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Grove City's motion for summary judgment (Doc. # 78), Plaintiffs' memorandum in opposition (Doc. # 87), and Defendant Grove City's reply memorandum (Doc. # 92).  For the reasons that follow, this Court finds the motion well taken in regard to Plaintiffs' federal claims, but declines to exercise jurisdiction over Plaintiffs' state law claims and remands said claims to the state court.

### I.  Background

As this Court stated in its prior decisions discussing the merits of this case (Docs. # 58, 64), Plaintiffs[1] are a assembly of corporate entities doing business as various hotels and lodging

---

[1]  The eight plaintiffs are Aarti Hospitality, LLC, Ariti, LLC, Blissful Corporation, Columbus Lodging Associates LP, Natraj Corporation, Felicia Corporation, Kali Hospitality, Ltd., and SGB Management, Inc.

establishments in and around Grove City, Ohio that have taken issue with Defendant Grove

City's 2003 amendment of a 1986 ordinance that purported to expand the boundaries of a

community reinvestment area ("CRA").  This CRA allowed Drury Inns, Inc. to enjoy a 15-year

tax abatement related to the construction of a new hotel on property purchased from Bob Evans

Farms, Inc., which also received an abatement for the construction of a new restaurant.

Asserting that they are at a competitive disadvantage, Plaintiffs contend that they are unable to

take advantage of the abatement unless they undertake remodeling or construct new

improvements upon their properties.

Plaintiffs also take issue with Grove City's approval of the design and feature plans for

the Drury Inn, which Plaintiffs contend afforded that hotel higher and larger signage due to the

increased height of the building.  This approval dates back to the apparent submission of Drury

Inn's preliminary development plan in late 2003 or early 2004 and the eventual approval of the

final development plan in 2005.  The Drury Inn ultimately obtained re-zoning to enable it to

proceed with construction of its high-rise facility.  The signs on the top of this facility exceed the

height of any pole signs located in the area.

In connection with the foregoing developments, Plaintiffs and their counsel sought

information from Grove City.  They assert that such information was not forthcoming.  The

Drury Inn facility eventually opened in late 2006 and sought a tax abatement for 2007.

On September 27, 2006, Plaintiffs filed an action against the previously identified

defendants, as well as other defendants, in the Franklin County Court of Common Pleas.  (Doc. #

2-3.)  The majority of the defendants subsequently joined in the removal of the action to this

Court on October 20, 2006.  (Doc. # 2-1.)  In December 2006, Plaintiffs then amended their complaint to add new claims against Grove City, so that their pleading asserted fourteen claims. Grove City filed a motion to dismiss, which this Court denied in a March 23, 2007 Opinion and Order.  (Doc. # 58.)  In a subsequent decision, however, the Court then dismissed against all defendants Counts One through Five of the amended complaint.[2]  (Doc. #64.)

This leaves pending the following claims, which the Court summarizes as they are described in the pleading: a federal equal protection claim (Count Six), a federal Fourteenth Amendment claim (Count Seven), a federal due process claim (Count Eight), a violation of public policy claim (Count Nine), a 42 U.S.C. § 1983 claim based on the equal protection clause (Count Ten), a § 1983 claim based on the due process clause (Count Eleven), a § 1983 claim based on Title VI of the Civil Rights Act of 1964 (Count Twelve), a state law claim for violation of Ohio Rev. Code § 149 et seq., the Ohio Public Records Act, and Ohio Rev. Code §§ 121 et seq. and 149 et seq., setting forth the Ohio Records Retention Schedule (Count Thirteen); and a state law claim for violation of Ohio Rev. Code § 121 et seq., the Ohio Open Meetings Act (Count Fourteen).  (Doc. # 36 ¶¶ 81-178.)  All of these nine remaining claims are directed against only Grove City, the only remaining defendant in this action, which has moved for summary judgment.  (Doc. # 78.)  The parties have completed briefing on the summary judgment motion, which is ripe for adjudication.

---

[2]  The amended complaint named the following defendants: City of Grove City, Drury, Inns, Inc., Bob Evans Farms, Inc., Lucas State Street Stringtown Ltd., unknown John Doe defendants, and Franklin County Auditor Joseph W. Testa.

## II.  Standard Involved

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### III.  Discussion[3]

#### A.  Constitutional Claims (Counts Six, Seven, Eight, Ten, Eleven, and Twelve)

All of Plaintiffs' constitutional claims fall under § 1983,[4] which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.  Thus, in order to assert a valid § 1983 claim, Plaintiffs must show that, while acting under color of state law, Grove City deprived them of a right secured by the Federal Constitution or laws of the United States.  *See Alkire v. Irving,* 330 F.3d 802, 813 (6th Cir. 2003).

Grove City first moves for summary judgment on Plaintiffs' § 1983 claims on the grounds that the claims are barred by the statute of limitations.  Section 1983 does not specify a statute of limitations.  This omission means that Ohio's two-year statute of limitations applies.

---

[3]  In citing to the parties' briefing in this section, the Court uses the page number assigned by the electronic filing system (*e.g.*, "Page 8 of 32").  Therefore, because the system counts a document as a whole beginning with the first page filed, even if that page is a cover sheet, what the parties numbered as the third substantive page of the original copy of a brief may be referenced here as the eighth page of the electronically filed version of the brief.

[4]  The parties agree in their briefing that under Sixth Circuit precedent, Plaintiffs' § 1983 claims subsume the redundant direct constitutional claims they also plead.  (Doc. # 78, at 9-10; Doc. # 87, at 17; Doc. # 92, at 8.)  Thus, Counts Ten, Eleven, and Twelve subsume Counts Six, Seven, and Eight.  *See Jordan v. Moore*, 205 F.3d 1340, 2000 WL 145368, at *1 (6th Cir. 2000) (unpublished table decision) (citing *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987), *vacated on other grounds*, 488 U.S. 1036 (1989)); *Demery v. City of Youngstown*, 818 F.2d 1257, 1263 n.6 (6th Cir. 1987) (citing *Thomas*).

*See Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855-56 (6th Cir. 2003) (two-year statute of limitations period found in Ohio Rev. Code § 2305.10 applies to § 1983 actions); *Browning v. Pendleton*,  869 F.2d 989, 991 (6th Cir. 1989) (stating that "when a state, like Ohio, has multiple statutes of limitation for personal injury actions, the appropriate state statute of limitations to borrow for claims brought under 42 U.S.C. § 1983 is the residual or general personal injury statute of limitations, not any statute of limitations for specific intentional tort." (citations omitted)).  The two-year statute of limitations " 'begins to run when plaintiffs knew or should have known of the injury which forms the basis of their claims.' " *Hodge v. City of Elyria*, 126 F. App'x 222, 224 (6th Cir. 2005) (quoting *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001)).

Plaintiffs' § 1983 claims are therefore barred if they accrued over two years before September 27, 2006, the date of filing of the original complaint in the Franklin County Court of Common Pleas.  (Doc. # 2-3.)  Pointing to a number of events, Grove City argues that the statute of limitations began to run in 2003.  Of import is the November 3, 2003 enactment of Ordinance C-99-03, which amended the 1986 city ordinance creating the CRA.  The 2003 ordinance expanded the boundaries of the CRA, which meant that the then-unbuilt Drury Inn hotel would fall within the tax-abatement area.

According to the deposition of Ballubhai Patel, a principal in several of the plaintiff companies (including those specifically related to the Hilton Garden and the La Quinta Inn) and one of Plaintiffs' representatives, he and his counsel met with a Grove City official in "maybe October or November some time" in late 2003 to inquire into the Drury Inn application and whether the tax abatement had been passed.  (Doc. # 76, B. Patel Dep., at 34-35.)  The ordinance had apparently not yet passed at the time of this meeting, but after its passage, Grove City

6

provided requisite public notice of the passage on November 5, 6, and 19, 2003.  The ordinance

then became effective on December 3, 2002.  Grove City asserts that "[t]he aforementioned

notices are the events that alerted the Plaintiffs about their alleged aggrieved property rights.

Therefore, at the latest, on November 19, 2003, Plaintiffs knew or should have known that

Ordinance No. C-99-03 would affect their rights and interests in their property and the

surrounding property in Grove City."  (Doc. # 78, at 11.)

Of course, Plaintiffs disagree.  They assert that their claims accrued after September 27,

2004, by which time the Drury Inn hotel had opened and had applied for the CRA tax abatement

for the 2007 calendar year.  Plaintiffs also argue that the statute of limitations did not expire on

November 19, 2003, the date of the last public notice, because their claims only "relate in part to

the Ordinance."  (Doc. # 87, at 17.)  In addition to the § 1983 claims related to that ordinance,

Plaintiffs argue that Grove City "provided benefits to Drury Inn that it denied to Plaintiffs" in

regard to a signage variance and an increase in the number of rooms from 150 to 180.  (Doc. #

87, at 18.)  Plaintiffs assert that they were unaware of such treatment until construction of the

Drury Inn hotel.

Given that, as discussed below, Grove City is entitled to summary judgment on the merits

of Plaintiffs' federal claims, the Court need not and will not devote much discussion to the

statute of limitations issue.  The Court notes, however, that it finds some logic to Grove City's

argument that the statute of limitations has expired on Plaintiffs' claims related to the tax

abatement and Ordinance C-99-03.  The crux of Plaintiffs' tax abatement argument is that they

were injured when the 2003 ordinance passed, which placed the prospective Drury Inn within the

CRA and treated that entity differently than Plaintiffs.  That would mean that the alleged

disparate treatment constituted a discrete act or incident with ongoing effects, but without continual or additional unlawful acts or incidents.

Plaintiffs' reliance on the continuing violation doctrine may not defeat this reasoning. That doctrine "saves a time-barred claim by allowing a plaintiff to combine its time-barred claim with a timely-filed claim in order to form one continuing violation, part of which occurred during the limitations period." *Firstline Corp. v. Valdosta-Lowndes County Indus. Auth.*, No. Civ.A. 7:03 CV 142 HL, 2005 WL 2304386, at *6 (citing Roberts v. Gadsden Mem'l Hosp., 835 F.2d 793, 800 (11th Cir. 1988)). Another judicial officer in this District has further explained that "[t]he Sixth Circuit applies a three-part test to determine whether a continuing violation exists. First, the wrongful conduct must continue after the precipitating event; second, the injury must continue to accrue after that event; and, third, further injury must be avoidable if the defendant ceases the wrongful conduct." *Moss v. Columbus Bd. of Educ.*, No. 2:00-CV-855, 2001 WL 1681117, at *3 (S.D. Ohio Sept. 27, 2001).

The purported injury complained of here–the alleged disparate treatment in passing an ordinance creating a tax abatement for which the Drury Inn would qualify–took place in 2003. The damages flowing from that injury might have come later, but Plaintiffs knew or should have known of the asserted constitutional violation at that early date. The *effects* of that alleged violation may indeed flow forward, but there is arguably no continuing, or additional, *conduct* when the acceptance of the Drury Inn's abatement application is regarded as simply formalizing the 2003 actions of the city. In other words, " '[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.' " *Id.* (quoting *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999)). It would be the

purportedly discriminatory expansion of the CRA and the Drury Inn's consequent classification as falling within the CRA that would be the actionable event; the approval of the abatement application (and applications until 2022 as Plaintiffs assert) would simply be the effect of that classification or prior alleged discrimination. This would mean that the statute of limitations has run on the abatement component of Plaintiffs' § 1983 claims. *See Bell v. Ohio State Univ.*, 351 F.3d 240, 247-48 (6th Cir. 2003).

Although the abatement limitations period is indeed a debatable issue, the Court would be more easily inclined to conclude that Plaintiffs' claims in regard to design and features, such as the signage issue, fall within the statute of limitations and are not subject to summary judgment on that ground. This latter city action, notably the 2005 final approval of the construction/zoning plan, would be within two years of the pleading. In any event, the foregoing discussion on the limitations periods related to the components of Plaintiffs' § 1983 claims is ultimately dicta.

Similarly non-dispositive is Grove City's attack on the viability of the § 1983 claims on the grounds that Plaintiffs lack standing to assert these claims. This Court need not and does not opine on this argument, however, because the merits argument addressed below proves dispositive of Plaintiffs' constitutional claims. The Court shall therefore proceed to address the substantive merits of Plaintiffs' § 1983 claims.

As noted, Plaintiffs aver that Grove City violated the Equal Protection Clause of the Fourteenth Amendment. The Sixth Circuit has explained that "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated

against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer District*, 922 F.2d 332, 341 (6th Cir. 1990) (quoting *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989) (en banc)).  The protected class Plaintiffs claim is that they are Asian-Americans.

To prevail on this claim, Plaintiffs must demonstrate that Grove City treated them worse than similarly situated persons.  *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574 (6th Cir. 2008).  But here, as in *Braun*, "the failure to make any concrete allegations with respect to similarly situated persons mandates a grant of summary judgment in the defendant's favor." *Id.* at 575.  Plaintiffs point out that the ordinance at issue and the CRA include Plaintiffs' hotels. Plaintiffs are thus eligible for the same treatment as Drury Inn and Bob Evans, if they, like Drury Inn and Bob Evans, satisfy the qualifying remodeling or improvement activities that are prerequisites to a tax abatement.[5]  There is no evidence in the record before this Court that

_____

[5]  This aspect of the litigation may be the result of a misunderstanding.  The following exchange took place at the deposition of Ballubhai Patel:

> Q.  My question is do you understand that since your motels are within CRA No. 2, that you can get a tax abatement if you do certain improvements or expansion?
> A.  I was not aware of it until now.

(Doc. # 76, B. Patel Dep., at 38.)  Before repeating several times that he was unaware that his motels were within the CRA and that he could also potentially qualify for a tax abatement, Mr. Patel went on to complain about the competitive advantage a tax abatement would give Drury Inn and how he has been charged a per page rate for records requested from Grove City.  (Doc. # 76, B. Patel Dep., at 39-40.)  It appears that the crux of his argument is that he simply disagrees with the system–especially his conception of the system–and how he is treated under that system.  But Mr. Patel individually and Plaintiffs as a whole cannot point to any direct or circumstantial evidence of a discriminatory animus underlying that system and the specific treatment they received.

Plaintiffs engaged in any building or qualifying remodeling and were then refused similar tax

treatment by Grove City.

In fact, during his deposition, Ballubhai Patel, a principal in many of the plaintiff

companies, testified as follows:

> Q.  In the complaint, or amended complaint at Paragraph 57, it says, "Plaintiffs sought tax abatement from Grove City prior to 2003."  Is that the one time you went to Mr. Boso that we talked about earlier?
>
> A.  Yes.
>
> Q.  Have you or any of the other owners of the motels that are plaintiffs in this case applied for any other tax abatements or requested a tax abatement at any time, other than when you went and had your short conversations with Mr. Boso?
>
> A.  Not that I know.

(Doc. # 76, B. Patel Dep., at 58-59.)  Later at his deposition, Patel further addressed Plaintiffs'

allegations concerning the tax abatement:

> Q.  Paragraph 124 [of the amended complaint] says "The City of Grove City refused to grant a real property tax exemption to plaintiffs that it granted to defendants Drury Inn and Bob Evans."  Do you know of any requests for a tax exemption made by you or any other plaintiffs to the City of Grove City other than what you talked about earlier where you has that one short discussion with Mr. Boso in '96-'97?
>
> A.  Regarding the property tax you mean?
>
> Q.  I will read this again.  The allegation of Paragraph 124 of the amended complaint says, "Defendant Grove City refused to grant a real property tax exemption to plaintiffs that it granted to defendants Drury Inn and Bob Evans."  My question is do you know of any requests for a tax exemption made by you or any of the other plaintiffs to the City?
>
> A.  Not that I know of.

(Doc. # 76, B. Patel Dep., at 60-61.)  Echoing this testimony, Comfort Inn owner Nanubhai Patel

testified in his own deposition as follows:

11

> Q.  Did you, on behalf of any of the hotels that you have an ownership interest in, ever seek a tax abatement from Grove City?
>
> A.  No.
>
> Q.  Are you aware that since later 2003, that some or all of the hotels you own or manage in Grove City are in a tax abatement area?
>
> A.  I don't know.

(Doc. # 77, N. Patel Dep., at 62.)  There is thus also no evidence that Plaintiffs even attempted to obtain an abatement on their structures during the relevant time period at issue.  In other words, there is no evidence of disparate treatment in regard to abatements.

This lack of evidence makes this case similar to *Zajicek v. Aaby*, No. 94 C 50066, 1995 WL 150031 (N.D. Ill. Apr. 3, 1995).  In *Zajicek*, a plaintiff filed a § 1983 suit on equal protection grounds over an ordinance that created an enterprise zone.  In concluding that the plaintiff was without a viable equal protection claim, the district court explained:

> [T]he essence of plaintiff's equal protection claim is that he did not receive certain tax benefits under the ordinances.  The tax benefits at issue are only made available to those owners of property upon which new improvements have been constructed or upon which existing ones have been renovated or rehabilitated, or those who have purchased building materials for remodeling, rehabilitation or new construction.  Thus, plaintiff must, to allege that he is similarly situated to those who have received the tax benefits, allege that he has undertaken improvements or purchased building materials either of which are similar to those improvements made or materials purchased by persons receiving the benefits.  This he has not done.

*Id.* at *4 n.2.  Here, too, Plaintiffs have failed to meet their burden of producing evidence–or even of creating a factual issue to survive summary judgment–that they have satisfied the similarly situated prong of the Court's mandated inquiry.

There is also no evidence before this Court that Plaintiffs were treated differently in regard to zoning and design features.  Plaintiffs devote considerable argument to addressing the fact that Drury Inn's signage is larger and higher than their signs, but Plaintiffs fail to produce evidence that this end result was due to disparate treatment.  The evidence before this Court in fact supports only a contrary finding.  For example, in his deposition, Ballubhai Patel testified as follows:

> Q.  Okay.  Now, in your complaint, the complaint filed on behalf of your two businesses, it says that a certain resolution has permitted Drury Inn certain signage and other building and design and development features which were denied to the plaintiffs, the various motels and hotels which are in this case. What signage does the Drury Inn have that has been denied to the various plaintiffs in this case?
>
> A.  Can you repeat that again, please?
>
> Q.  Sure.  There's an allegation in this case – it's alleged that the Drury Inn is permitted certain signage which has been denied to the various motels that are plaintiffs in this case, and I just want to find out what signage has been denied to the various plaintiffs?
>
> A.  Due to the high-rise building, they have a more advantage against our other existing motel which has a lower signage, which is a 30-feet-high building and the Drury Inn building is 50 to 60 feet high, and they have a competitive edge against us, and they are not paying any property tax on it.
>
> Q.  My question is you just told me just a minute or two ago that Comfort Inn, the Best Western, Red Roof, Hampton Inn, and the Saver Inn --
>
> A.  S-a-v-e-r.  It's an independent hotel.
>
> Q.  – Saver Inn and Days Inn, they all have high-rise signs?
>
> A.  Right.
>
> Q.  And that's what – so they have a high-rise sign and so does Drury Inn, right?
>
> A.  Drury Inn don't have a high-rise sign, but due to the higher building they have a higher signage, which La Quinta and the Hilton Garden don't have it because our building is 30 feet high and their building is 60 feet high.
>
> Q.  Okay.  But the – six other hotels out there, including some of the plaintiffs in this case, have high-rise signs?

13

A.  Yes, they do.

Q.  Okay.  And all six of those other motels are owned by Asian-Americans, right – Chinese or Indian?

A.  Yes.

Q.  They have all requested variances to have a high-rise sign and they have been granted, right?

A.  Yes.

Q.  Have you ever requested a high-rise sign for your two motels?

A.  I requested for La Quinta Inn before the construction.

Q.  And you talked about that earlier, right?

A.  Yes.  After that, I have not for any Hilton or anything.

Q.  So we have already discussed the only time you applied for a high-rise sign was in regard to the Super 8, which is now the La Quinta, right?

A.  Right, right.

Q.  And we have already talked about that, right?

A.  Right.

Q.  You have not applied for a high-rise sign since then, have you?

A.  No.

Q.  Do you know if the owners of any of the other motels that are plaintiffs in this case have applied for a high-rise signs that have been denied?

A.  Not that I know.

Q.  What building and design – doesn't say what – I am trying to figure this out in the complaint here – I guess features.  What building and design features was the Drury Inn afforded that was not permitted for you or the other plaintiffs?

A.  High-rise building.

Q.  Did you apply to construct a high-rise building for the Hilton?

A.  No.

Q.  Did you apply to construct a high-rise building for the Super 8, now the La Quinta?

A.  No.

Q.  Do you know if any of the other plaintiffs have applied or had applied to build high-rise buildings?

A.  Not that I am aware.

14

Q.  What development features have been afforded to the Drury Inn that were not afforded to you and the other plaintiffs?

A.  Excuse me.  Can you repeat this?

Q.  Sure.  The complaint says that certain signage and other building design and development features were permitted to the Drury Inn and denied to the plaintiffs.  We have talked about the signage, and we talked about building design, and the third part of that allegation is design features.  What design features were permitted to the Drury Inn and denied to the plaintiffs?  Anything that you can think of?

A.  I don't know of any.

. . .

Q.  Paragraph 59 of the complaint states that, "On information and belief, Grove City enforced certain building and design and development features as well as zoning codes against the plaintiffs that were not enforced against the Drury Inn."  What building and design features were not enforced against the Drury Inn but were enforced against you?

A.  Height.

Q.  Again, did you ever apply to construct a high-rise building?

A.  No.

Q.  Did any of the other hotels that are plaintiffs apply to construct a high-rise building?

A.  Not that I know.

Q.  How about development features?  Do you know any development features that were enforced against you or the other hotels that are plaintiffs that were not enforced against the Drury Inn?

A.  Not that I know.

Q.  How about zoning codes?  Any zoning codes that were enforced against you and the other plaintiffs that were not enforced against the Drury Inn?

A.  Not that I know.

(Doc. # 76, B. Patel Dep., at 55-60.)  This lengthy testimony concedes that Grove City did not

treat Plaintiffs differently than similarly situated entities.

The deposition testimony of Nanubhai Patel, another principal involved in this litigation,

again echoes Ballubhai Patel's concessions.  Nanubhai Patel conceded that the Stringtown Road

15

Hampton Inn that is owned by individuals of Indian descent has a high-rise sign (Doc. # 77, N.

Patel Dep., at 59) and the Red Roof Inn owned by an individual of Indian descent also has a

high-rise sign (Doc. # 77, N. Patel Dep., at 60).  Similarly, the Comfort Inn that he owns has a

high-rise sign.  (Doc. # 77, N. Patel Dep., at 60.)  Nanubhai Patel additionally testified as

follows:

> Q.  Do you have any information that you are treated differently as
> opposed to the owners of the Drury Inn because you're Indian and they're not?
>
> A.  No, no, huh-uh.

(Doc. # 77, N. Patel Dep., at 63.)  Later, Nanubhai Patel made the following concession:

> Q.  Have you ever been denied the opportunity to file any applications or
> variances or anything with the city?
>
> A.  No.

(Doc. # 77, N. Patel Dep., at 64.)  He then testified:

> [Q.] I asked you earlier if you've been discriminated against by Grove
> City because you are of Indian descent, and you said you don't have information
> to that effect, correct?
>
> A.  Yes.

(Doc. # 77, N. Patel Dep., at 66.)

Plaintiffs cannot complain of an equal protection violation regarding the height of the

Drury Inn and its resulting signage when they neither sought and were denied permission to

build similarly tall facilities nor sought and were denied signage or design features afforded to

the Drury Inn.  They also cannot complain in an equal protection argument about the building

design or features of the Drury Inn when they have not sought and were denied the same or

similar designs and features.  There is simply no basis to conclude that there has been disparate treatment here, or even a factual question as to disparate treatment.  Although Plaintiffs point to their general *feelings* that they were discriminated against (Doc. # 87, at 11), they have failed to introduce evidence of that discrimination.  No inference of discrimination is therefore possible based on Plaintiffs' own factual concessions and representations.

Additional testimony by Ballubhai Patel underscores this point.  Later in his deposition, Patel testified:

> [Q.]  To your knowledge, did the City of Grove City ever take any action against any of the hotels that are plaintiffs in this case because those hotels were owned by Asian-Americans?
>
> A.  Not that I know.
>
> Q.  To your knowledge, did the City of Grove City ever refuse to do anything for any of the hotels that are plaintiffs in this case because they are owned by Asian-Americans?
>
> A.  Not that I know.

(Doc. # 76, B. Patel Dep., at 62.)  In light of this testimony, the Court cannot say that any reasonable jury could come to any other conclusion but that Grove City is entitled to judgment on the equal protection component of Plaintiffs' § 1983 claims.

Plaintiffs also assert a procedural due process claim under § 1983.  To the extent that Plaintiffs arguably assert an equal protection claim grounded in a due process violation–in other words, that they were denied due process afforded others *because of* their race–Plaintiffs have failed to direct this Court to any evidence supporting such a claim.  In fact, Ballubhai Patel testified:

> Q.  To your knowledge, have you or any of the owners of the plaintiff
> motels ever been denied the opportunity to be heard at a hearing, to be heard at a
> proceeding, or have been denied any information in regard to the Drury Inn
> because you are Asian-Americans?
>
> . . .
>
> A.  I don't know of any.

(Doc. # 76, B. Patel Dep., at 63.)  More clear is that Plaintiffs allege that Grove City simply failed to notify them of certain proceedings and hearings that affected their rights.[6]

Procedural due process entitles a party to notice and the opportunity to be heard prior to deprivation of that party's property interest.  *See Stringfield v. Graham*, No. 04-5777, 2007 WL 62630, at *6 (6th Cir. Jan. 8, 2007).  Therefore, as the Sixth Circuit has recently explained, "[t]o succeed on a procedural due process claim under § 1983 , [Plaintiffs] 'must establish a constitutionally protected liberty or property interest and show that such an interest was deprived without appropriate process.' "  *Rogers v. Tennessee Bd. of Regents*, No. 07-5585, 2008 WL 961631, at *4 (6th Cir. Apr. 9, 2008) (quoting *Midkiff v. Adams County Reg'l Water Dist.,* 409 F.3d 758, 762 (6th Cir. 2005)).

The Court will assume–only for the sake of argument, given that it is a debatable proposition–that a deprivation of *some* property interest has occurred.  Similar to their equal protection claim, however, Plaintiffs have nonetheless produced no evidence in support of their due process claim.  As described above and as supported by the affidavit of Grove City's Clerk

---

[6]  It is important to note that, despite summarizing the incidents in their memorandum in opposition (Doc. # 87), Plaintiffs are not asserting a due process or equal protection claim for Grove City's 1998 denial of a signage variance for Ballubhai Patel, for the earlier 1996 or 1997 rebuke of his inquiry into receiving a tax abatement, or for city action in regard to the 2001 events surrounding the proposed construction of a larger Hilton hotel.

of Council, Tami Kelly, the evidence indicates that Grove City provided the requisite notice of

Ordinance C-99-03 and its public hearings.  (Doc. # 78-2, Kelly Aff. ¶¶ 9, 11-12.)  Plaintiffs

have produced no evidence to the contrary.  Nor have they directed this Court to any authority

supporting the proposition that they were entitled to separate, specific notice beyond the notice

provided by Grove City.

For example, the deposition testimony of Nanubhai  Patel supports Grove City's

assertion that it is entitled to summary judgment.  He testified that he was never denied the

opportunity to attend any hearings or meetings with the City of Grove City.  (Doc. # 77, N. Patel

Dep., at 64.)  The deposition testimony of Ballubhai Patel is of similar content; he explained that

he did not attend any city council or planning commission public meetings concerning the Drury

Inn and conceded that he not aware that Grove City provides public notice regarding these

meetings.  (Doc. # 76, B. Patel Dep., at 49-51.)  Ballubhai Patel also testified:

> Q.  Now, in looking at your complaint, there's an allegation at Paragraph
> 36 – actually, it's the amended complaint – that states that you requested Grove
> City to give you notice of variances, special building and design features, zoning
> modifications, or tax benefits requested by the Drury Inn, or be given by Grove
> City to the Drury Inn.  Again, are you aware of any law, or statute, or ordinance
> either in Grove City or Ohio that required Grove City to notify you of variances,
> building and design features, zoning modifications, or tax benefits requested by
> the Drury Inn?
>
> A.  Not that I know.
>
> Q.  Now, when a property owner requests a zoning or a building variance
> such as you did with your sign, who is required to be notified of the variance
> other than the person making the request; do you know?
>
> A.  Neighboring property.
>
> Q.  Just the neighboring property?  The property which abuts up to the
> owner requesting the variance?
>
> A.  Yes.

Q.  Would the same apply to the zoning variances?

A.  I think so.

Q.  So if it's a building or zoning variance for a property owner, it's your understanding that the neighboring property owners, the ones that abut against the abutting owner, that they should get a notice?

A.  Yes.

Q.  Correct?  That's your understanding?

A.  Yes.

Q.  To your knowledge, are neighboring property owners required to get any other sorts of notices from the City of Grove City when somebody is doing construction other than when a property owner is seeking a zoning or building variance?

A.  Not that I know.

Q.  The Hilton Garden Inn, is that a neighboring property?  Does it abut up to the property owned by the Drury Inn?

A.  No.

Q.  How about the La Quinta, is that a neighboring property to the --

A.  No.

Q.  – to the Drury Inn?

A.  No.

Q.  How about the Comfort Inn South?

A.  No.

Q.  How about the Holiday Inn Express?

A.  No.

Q.  How about the Best Western?

A.  No.

Q.  How about the Microtel?

A.  No.  They are across the street.

Q.  How about the Days Inn?

A.  They are across the street on the other side.

Q.  The answer is no?

A.  Yes.

Q.  No?

A.  Yes.

      Q.  How about the Hampton Inn?

      A.  No.

(Doc. # 76, B. Patel Dep., at 43-46.)  Ballubhai Patel further conceded that he was not aware of

any legal requirement that Grove City notify him when it passed any ordinance or approved any

request regarding the Drury Inn.  (Doc. # 76, B, Patel Dep., at 51.)  Thus, even under Plaintiffs'

own understanding of Grove City's legal obligations, the city was not required to provide them

the specific notices Plaintiffs complain about not receiving.  Grove City is therefore also entitled

to summary judgment on the due process component of Plaintiffs' § 1983 claims.

      This leaves one component of the six federal claims under discussion.  As noted,

Plaintiffs assert in Count Twelve of the amended complaint a § 1983 claim for violation of Title

VI of the Civil Rights Act of 1964.  (Doc. # 36 ¶¶ 151-54.)  Grove City contends that it did not

receive any federal financial assistance related to Ordinance C–99-03 and that, even if the

ordinance falls within the scope of Title VI, they are still entitled to summary judgment because

there has been no discrimination based on national origin.  Plaintiffs disagree and argue in regard

to the former proposition that the focus is on whether the city received any federal funds.  In

regard to the latter proposition, Plaintiffs assert that they "can prove a violation of the Equal

Protection Clause, and therefore, they can prove a violation of the Civil Rights Act."  (Doc. # 87,

at 29.)

      The Court need not and does not address the federal funding issue because, as addressed

above, Plaintiffs have failed to evade summary judgment on their equal protection claims.[7]

---

[7]  The Court recognizes the argument that Plaintiffs would have to demonstrate "that
there is some nexus between the receipt of federal funds and alleged discrimination."  *Moss*,

Absent discrimination, Plaintiffs' § 1983 claim predicated on Title VI necessarily must also fail.

### B. Public Policy Claim (Count Nine)

Plaintiffs' sole remaining federal claim is found under Count Nine of the amended complaint, which provides in its entirety:

> 138. Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully rewritten herein.
>
> 139. Defendant Grove City's actions, as set forth supra, are in violation of public policy.
>
> 140. As a result of this violation, Plaintiffs have been damaged in an amount to be determined but in excess of $250,000.00.

(Doc. # 36 ¶¶ 138-40.) Grove City attacks this claim on the grounds that it is improperly vague. The city also notes that "the allegation of a violation of public policy is subsumed within [Plaintiffs'] other claims, which ultimately fail for the reasons set forth within Grove City's Motion for Summary Judgment and this Reply." (Doc. # 92, at 28.)

The Court concludes that Grove City is entitled to summary judgment on Plaintiff's public policy claim because, as set forth above and in this Court's prior orders, none of the incorporated, underlying facts and claims present violations. Logic dictates that there can be no recovery for violation of a public policy when there is no violation of a statute embodying that policy.

### C. State Law Claims (Counts Thirteen and Fourteen)

---

2001 WL 1681117, at *11.

Pursuant to the foregoing, the Court has concluded that none of Plaintiffs' federal claims survive summary judgment.  Having so dismissed Plaintiffs' federal claims, this Court presumptively should not address any state law claim.  *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that "[w]here, as here, a federal court has properly dismissed a plaintiff's federal claims, there is a 'strong presumption' in favor of dismissing any remaining state claims unless the plaintiff can establish an alternate basis for federal jurisdiction." (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1998))).  Plaintiffs have failed to suggest any justification or alternative basis for exercising jurisdiction over their remaining state law claims should the Court grant summary judgment on their federal claims.

The extant question is whether a dismissal without prejudice or a remand of Plaintiffs' remaining state law claims is warranted.  The Sixth Circuit has explained that " '[w]hether to remand or dismiss is a matter normally left to the discretion of the district court.' " *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 761 (6th Cir. 2000) (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1267 (D.C. Cir. 1995)).  In considering the alternatives, the Court recognizes that Plaintiffs originally sought to pursue their claims in state court.  Having weighed this factor, as well as the relevant considerations involving judicial economy, convenience, fairness to the parties, and comity, this Court in its discretion both declines to exercise its supplemental jurisdiction over Plaintiffs' remaining state law claims, *see* 28 U.S.C. § 1367(c)(3) and (4), and remands these two claims to the state court.  *See Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 583 (6th Cir. 2007) ("In cases that have been removed to federal court . . . we have recognized that 'when all federal claims have been dismissed before

trial, the best course is to remand the state law claims to the state court from which the case was removed.' " (quoting *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 359 (6th Cir. 2004))). The Court emphasizes that it expresses no opinion as to the merits of these remanded state law claims.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant Grove City's motion for summary judgment in regard only to Plaintiffs' federal claims.  (Doc. # 78.)  The Court declines to exercise jurisdiction over Plaintiffs' remaining state law claims and remands said claims to the Franklin County Court of Common Pleas.  The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED**.

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE